# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| KEVIN POLK, individually and on behalf of all others similarly situated, ) ) | CASE NO. _____ |
| ) | |
| Plaintiff, ) | |
| ) | **JURY TRIAL DEMANDED** |
| v. ) | |
| ) | |
| DELTA AIR LINES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |
| _____ ) | |

## CLASS ACTION COMPLAINT

Plaintiff Kevin Polk ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following against Defendant Delta Air Lines, Inc. ("Delta" or "Defendant") based on personal knowledge as to his own experience, on information and belief, and on investigation of counsel as to all other matters.

## NATURE OF THE ACTION

1.     In the midst of the greatest public health and economic crisis in living memory, Defendant, one of the world's largest passenger air carriers, has sought to shift its losses onto its innocent passengers, furthering the financial hardship endured by people across the country.

2.     Each of Defendant's airfare tickets encompasses a contractual agreement between it and its passengers. That agreement gives passengers the right to a refund if their flight is cancelled.

3.     With mounting cancellations due to the Covid-19 pandemic, Defendant has sought to refrain from paying out the refunds for cancelled flights to which its passengers are entitled.

4.     Plaintiff brings this action on behalf of himself and a class of similarly situated individuals who were deprived of refunds for cancelled flights.

5.     Defendant has quietly sought to force its passengers to endure the financial losses that its own contract created for it in the entirely foreseeable scenario that world occurrences would disrupt the domestic travel industry.

6.     Defendant's uniform conduct is equally applicable to the class. Plaintiff brings this class action against Defendant for breach of contract and seeks

2

an order requiring Defendant to, among other things: (1) refrain from issuing travel credits in lieu of refunds to any Class member who has not requested travel credits; and (2) pay damages and/or restitution to Plaintiff and Class members.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

8.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391(a)(2) because, as noted above, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

## PARTIES

9.     Plaintiff Kevin Polk is a resident and citizen of Morristown, Tennessee.

10.     Defendant Delta Air Lines, Inc. is a foreign corporation organized under the laws of Delaware with its principal place of business at 1030 Delta Blvd., Atlanta, Georgia 30354.

## FACTUAL ALLEGATIONS

11.    Delta touts itself as the "world's most valuable airline brand."[1] According to Delta, it serves over 200 million customers every year. It operates over 5,000 daily flights to more than 300 destinations in over fifty countries and has as many as 15,000 affiliated departures a day through its global partners.

12.    Delta generates over 70% of its passenger revenue from its domestic network, centered around high-margin core hubs in Atlanta, Minneapolis-St. Paul, Detroit and Salt Lake City. These core hub positions complement strong coastal hub positions in Boston, Los Angeles, New York-LaGuardia, New York-JFK and Seattle.

13.    Delta also serves the Transatlantic, Transpacific and Latin America markets directly on Delta and through joint ventures with global airline partners. Internationally, Delta has significant hubs and market presence in Amsterdam, London-Heathrow, Mexico City, Paris-Charles de Gaulle and Seoul-Incheon.

14.    Delta offers and sells flight tickets directly to customers through www.delta.com, and Delta's mobile applications. Customers make monetary

---

[1] Delta Air Lines, Inc. Form 10-K, December 31, 2019.
http://www.annualreports.com/HostedData/AnnualReports/PDF/NYSE_DAL_2019.pdf (last visited May 29, 2020).

payments to Delta in exchange for a selected flight itinerary that conforms to a customer's specifically selected travel schedule.

15.    Delta also sells flight tickets through third-party websites and travel agencies.

16.    Delta collects passenger identification information as part of each ticket sale, including name, address, and telephone information, and each ticket purchased guarantees customers a seat on a specific, scheduled flight departing at a specific time from a specific airport.

17.    As part of each ticket purchase, Delta makes a promise and warranty to customers that in the event of a flight cancellation, the airline must either re-accommodate passengers on the next available flight or refund the passengers.

18.    For involuntary refunds, Delta warrants that "[i]f a refund is required because of Delta's failure to operate on schedule or refusal to transport . . . the following refund will be made directly to you:

1) If no portion of the ticket has been used, the refund will be an amount equal to the fair paid.

2) If a portion of the ticket has been used and termination (interruption) occurs:

5

a) <u>At A Fare Breakpoint</u> - The refund will be an amount equal to the fare paid for the unused transportation from the point of termination (interruption) to the destination or next Stopover point named on the ticket, or to a point at which transportation is to be resumed. No refund will apply when alternate transportation is provided by Delta and accepted by the passenger.

b) <u>Within A Fare Component</u> - The refund will be an amount equal to the percentage of unflown mileage to fare component total mileage by prorating the fare paid for the fare component, from the point of termination/interruption to the destination, or next Stopover point named on the ticket, or to the point at which transportation is to be resumed. No refund will apply when alternate transportation is provided by Delta and accepted by the passenger."

19.    Delta's Contract of Carriage does not promise, permit, or require the issuance of any travel credits or coupons in lieu of monetary refunds in the event of cancellation.

20.     Under U.S. law, 49 U.S.C.S. 41712 prohibits unfair or deceptive practices in the air carrier industry and "since at least the time of an Industry Letter of July 15, 1996 … the [DOT's] Aviation Enforcement Office has advised carriers that refusing to refund a non-refundable fare when a flight is cancelled and the passenger wishes to cancel is a violation" of that section.   Enhancing Airline Passenger Protections, 76 Fed. Reg. 23110-01, 23129.

21.     As part of each ticket purchase, Delta made a promise and warranty to customers that in the event of a flight cancellation or substantially interrupted flight, customers are entitled to a full monetary refund.

### Delta's Response to the Covid-19 Pandemic

22.     On January 30, 2020, the World Health Organization declared the Covid-19 virus a public health emergency of international concern.

23.     As of late-February, Covid-19 confirmed cases in the United States were detected and exponentially increasing, including cases that were not caused by recent international travel but through community spread.

24.     On March 11, 2020, the WHO officially declared Covid-19 a global pandemic.

25.    Throughout March, daily cases of Covid-19 were increasing dramatically as well, in addition to many of the countries where Defendant offers air travel services.

26.    Across the United States, state and local governments began issuing shelter-in-place orders that specifically prohibited non-essential travel, specifically including air travel because of the extraordinary risk that air travel presented to the ability to strictly adhere to social distancing standards and avoid inter-community and inter-state travel—both of which threatened to dramatically increase the spread of the virus.

27.    The U.S. Federal Government issued social distancing guidelines that further warned of the substantial risks of human-to-human and community spread of the virus, and air travel was clearly discouraged.

28.    It was entirely known and foreseeable to Delta that many of its previously scheduled flights, arriving in and departing from the United States, would need to be cancelled in order to protect the public from a catastrophic infection spread and loss of life and respond to the dramatically decreased demand for air travel.

29.     Yet, Delta quietly ceased honoring contractual agreements with customers, including Plaintiff and the putative Class, by discontinuing full monetary refunds for cancelled and substantially rescheduled flights.

30.     Contrary to the terms of its contracts with its customers, Delta's website states: "In keeping with our longstanding policy, if we cancel or significantly delay a flight (delays or changes greater than 90 minutes), we will first attempt to rebook you on an alternative flight, if one is available. If we cannot find an alternate flight and we cancel the reservation for you, or if you choose to cancel the alternative itinerary we have selected for you, you have a couple of options:

- An eCredit for the value of the ticket, which can be used toward future travel through September 30, 2022; or

- If you prefer, you may request a refund to your original form of payment."[2]

31.     These options are contrary to Delta's contractual promises, which require Delta to simply offer either a refund or rebooking on the next available flight. Delta's contracts with its passengers does not promise, permit, or require issuance of any travel credits or coupons in lieu of monetary refunds in the event of

---

[2] https://www.delta.com/us/en/travel-update-center/overview#faq (last visited May 29, 2020).

cancellation. Indeed, Delta's contracts with passengers make no mention of the possibility of eCredits for future travel, and such an offer is inconsistent with the promises Delta made to its customers.

32.     Instead of providing an automatic refund, as promised, Delta requires its customers to navigate through its website, including by using login information and password, merely to request a refund.

33.     Delta has established numerous additional bureaucratic barriers which prevent many passengers from receiving a monetary refund, ensuring a windfall to Delta because it knows many customers will be unable to successfully complete the refund request process.

34.      Upon refund requests, Delta is uniformly denying refunds to customers and forcing them to accept travel credits or coupons.

35.     Delta also sets harsh and untenable expiration dates on the future credits, permitting the company to receive a windfall because many passengers will not redeem the credits.

36.     The practice of offering expiring credits is particularly wrongful and inadequate during the Covid-19 epidemic because it remains entirely unclear when international air travel will once again be safe.

37.    The future travel credits provide Delta additional opportunities to charge service, processing, baggage, and other fees that will ensure Delta additional future profits—while retaining Plaintiff's cash in the interim—substantially diminishing any value for Plaintiff and the putative Class.

38.    Recognizing the abuse, and potential for abuse, by Delta and other airline companies, the United States Department of Transportation ("DOT") was forced to step in to remind airlines companies that they remain under an obligation to provide passengers with their rights to a refund for a cancelled flight resulting from the Covid-19 pandemic.

39.    On April 3, 2020, the DOT issued a notice to remind carriers "that passengers should be refunded promptly when their scheduled flights are cancelled or significantly delayed."  It notes that "[a]lthough the COVID-19 public health emergency has had an unprecedented impact on air travel, the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged."[3]

---

[3] https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf (last accessed May 29, 2020).

40.     The notice continues that:

[t]he Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed. In many of these cases, the passengers stated that the carrier informed them that they would receive vouchers or credits for future travel. But many airlines are dramatically reducing their travel schedules in the wake of the COVID-19 public health emergency. As a result, passengers are left with cancelled or significantly delayed flights and vouchers and credits for future travel that are not readily usable.

Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier.1 The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions).2 The focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger. Accordingly, the Department continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the carriers' obligation that could subject the carrier to an enforcement action.

…

Specifically, the Aviation Enforcement Office will refrain from pursuing an enforcement action against a carrier that provided passengers vouchers for future travel in lieu of refunds for

cancelled or significantly delayed flights during the COVID-19 public health emergency so long as: (1) the carrier contacts, in a timely manner, the passengers provided vouchers for flights that the carrier cancelled or significantly delayed to notify those passengers that they have the option of a refund; (2) the carrier updates its refund policies and contract of carriage provisions to make clear that it provides refunds to passengers if the carrier cancels a flight or makes a significant schedule change; and (3) the carrier reviews with its personnel, including reservationists, ticket counter agents, refund personnel, and other customer service professionals, the circumstances under which refunds should be made.

41.    In addition to violation of its own Contract of Carriage, Delta has failed to conform to the April 3, 2020 DOT Notice and 49 U.S.C. 41712 and provide full refunds to its passengers.

42.    Delta has deprived Plaintiff and the Class of the refunds to which they are entitled by 1) failing to provide cash refunds or refunds to their credit or debit cards; 2) issuing credits or coupons in place of refunds; 3) rendering it functionally impossible to specifically request refunds over vouchers/coupons by inaccessibility of customer service, with wait times of more than two hours frequently reported; and/or 4) obscuring passengers' right to a monetary refund.

*Plaintiff's Use of Delta's Services*

43.    On or about December 27, 2019, Plaintiff purchased four round-trip tickets for Plaintiff and his family for travel from Morristown, Tennessee to San Jose, California departing on May 24, 2020 and returning on June 7, 2020. Plaintiff purchased the flights, which included preferential seating and "cancel for any reason insurance" directly from Delta's website and paid cash fares totaling $2,319.96 using his credit card.

44.    Concerned about the possibility of flight cancellations, in or around April 2020, Plaintiff called Delta customer service to ensure that he would be refunded in the event his flight was cancelled. Plaintiff was told that if Delta cancelled the flight, Plaintiff would receive a full refund.

45.    On May 19, 2020, Plaintiff received an e-mail notification from Delta that their flight to San Jose was cancelled by the airline. The e-mail notification also stated that Delta was processing Plaintiff's eCredit, which Plaintiff would find in his "My Wallet within 7 business days."

46.    The eCredit that Delta indicated it would provide would be good for two years.

47.     At the time Plaintiff purchased the tickets, Plaintiff understood that he would be entitled to a refund if his flight was cancelled.

48.     Despite Plaintiff's requests for monetary refunds via e-mail, phone calls and Twitter messages, Delta failed to provide a refund to Plaintiff and, instead, only offered Plaintiff travel credits for use on a future Delta flight.

## CLASS ALLEGATIONS

49.     Plaintiff brings this action under Rule 23 and seek certification of the claims and issues in this action pursuant to the applicable provisions of Rule 23.  The proposed class is defined as:

> All persons residing in the United States or its territories who purchased tickets for travel on a Delta flight scheduled to operate from March 1, 2020 through the date of a class certification order, whose flight(s) were cancelled by Delta, and who were not provided a refund.

50.     Excluded from the Class are (a) any person who has specifically requested a travel credit or coupon in lieu of a refund; (b) any person who requested and received alternative air transportation in lieu of a refund; (c) all persons who are employees, directors, officers, and agents of Defendant; (d) governmental entities; and (e) the Court, the Court's immediate family, and Court staff.

51.     Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

52.     **Numerosity**. Fed. R. Civ. P. 23(a)(1). While the precise number of Class members has not yet been determined, members of the Class are so numerous that their individual joinder is impracticable. Defendant carries over 200 million passengers per year on tens of thousands of flights. A significant percentage of those flights during the Class period have been cancelled. At a minimum, there are tens of thousands of Class members but very likely many more. The exact size of the proposed Class and the identity of all class members can be readily ascertained from Defendant's records.

53.     **Commonality**. Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the Class, which questions predominate over any questions affecting only individual Class members.  Common issues include:

> A.     Whether Defendant formed contracts with its passengers in selling them tickets for air travel;

B.     Whether Defendant's conduct breaches the terms of its contracts with its passengers, including its Contract of Carriage and Terms of Use;

C.     Whether Defendant is required to provide a refund, rather than travel credits, to passengers for cancelled flights.

D.     The nature of the relief, including equitable relief, to which Plaintiff and the Class are entitled.

54.     **Typicality**. Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of Class members' claims. Plaintiff and all Class members were exposed to substantially similar contracts, breaches, and sustained injuries arising out of and caused by Defendant's unlawful conduct.

55.     **Adequacy**: Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class that he seeks to represent; Plaintiff has retained counsel that are competent and highly experienced in class action litigation; and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

17

56. **Superiority**: A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class members. The claims of Plaintiff and individual Class members are small compared to the burden and expense that would be required to separately litigate their claims against Defendant, and it would be impracticable for Class members to seek redress individually. Litigating claims individually would also be wasteful to the resources of the parties and the judicial system and create the possibility of inconsistent or contradictory judgments. Class treatment provides manageable judicial treatment which will bring an orderly and efficient conclusion to all claims arising from Defendant's misconduct. Class certification is therefore appropriate under Rule 23(b)(3).

57. Class certification is also appropriate under Rule 23(b)(1), as the prosecution of separate actions by individual members of the Class would create the risk of adjudications with respect to individual Class members that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and substantially impair their ability to protect those interests.

58. Class certification is also appropriate under Rule 23(b)(2), as Defendant has acted and/or refused to act on grounds generally applicable to the Class, thereby

making final injunctive relief or corresponding declaratory relief appropriate for the Class.

## COUNT I
## BREACH OF CONTRACT

59.    Plaintiff hereby incorporates all previous allegations.

60.    A contract was formed between Plaintiff and Class members on the one hand and Defendant on the other with respect to the purchase of airfare.

61.    The contract was offered by Defendant and formed at the time Plaintiff and the Class accepted it by purchasing their tickets.

62.    The contract that governs the transactions at issue in this case requires refunds for cancelled flights where the passenger does not elect to take substitute transportation.

63.    Plaintiff and the Class performed their obligations under the contract.

64.    Defendant breached the contract when they sought to provide travel credits or coupons in lieu of refunds for passengers on cancelled flights.

65.    Defendant's breaches were willful and not the result of mistake or inadvertence.

66.    As a result of Defendant's breach Plaintiff and other Class members have been damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and the Class, respectfully requests that the Court grant the following relief:

A.      Certify this case as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), and, pursuant to Fed. R. Civ. P. 23(g), appoint Plaintiff as Class representative and his counsel as Class counsel.

B.      Award Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement.

C.      Award Plaintiff and the Class equitable, injunctive, and declaratory relief as may be appropriate. Plaintiff, on behalf of the Class, seeks appropriate injunctive relief designed to, *inter alia*, ensure against the unlawful conduct alleged herein.

D.      Award Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable.

E.      Award Plaintiff and the Class reasonable attorneys' fees and costs as allowable.

F.      Award Plaintiff and the Class such other favorable relief as allowable under law or at equity.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff requests a trial by jury for all claims so triable.

Dated: June 9, 2020

Respectfully submitted,

<u>s/Andrea S. Hirsch</u>
Andrea Hirsch (GA Bar No. 666557)
**THE HIRSCH LAW FIRM**
230 Peachtree Street, Suite 2260
Atlanta, Georgia 30303
Telephone: 404-487-6552
Facsimile: 678-541-9356
andrea@thehirschlawfirm.com

Robert Ahdoot (PHV Forthcoming)
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: 310-474-9111; Fax: 310-474-8585
rahdoot@ahdootwolfson.com

**LIDDLE & DUBIN, P.C.**
David R. Dubin (PHV Forthcoming)
Nicholas A. Coulson (PHV Forthcoming)
975 E. Jefferson Ave.
Detroit, Michigan 48207
Tel: 313-392-0015
Fax: 313-392-0025
ddubin@ldclassaction.com
ncoulson@ldclassaction.com

*Counsel for Plaintiff and the Putative Classes*

21